**No. 26-1325**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

AMERICAN ACADEMY OF PEDIATRICS; AMERICAN COLLEGE OF PHYSICIANS, INC.; AMERICAN PUBLIC HEALTH ASSOCIATION; INFECTIOUS DISEASES SOCIETY OF AMERICA; SOCIETY FOR MATERNAL-FETAL MEDICINE; JANE DOE; MASSACHUSETTS PUBLIC HEALTH ASSOCIATION d/b/a Massachusetts Public Health Alliance; MASSACHUSETTS CHAPTER OF THE AMERICAN ACADEMY OF PEDIATRICS, INC.; JANE DOE, JANE DOE 2; and JANE DOE 3,

*Plaintiffs-Appellees,*

*v.*

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; JAY BHATTACHARYA, in his official capacity as Acting Director of Centers for Disease Control and Prevention; CENTERS FOR DISEASE CONTROL AND PREVENTION; and DOES 1–50, inclusive,

*Defendants-Appellees.*

MARTIN MAKARY, in his official capacity as Commissioner of the Food and Drug Administration; US FOOD & DRUG ADMINISTRATION; JAY BHATTACHARYA, in his official capacity as Director of the National Institutes of Health; NATIONAL INSTITUTES OF HEALTH,

*Defendants,*

ANDREA SHAW, SHANTICIA NELSON, DR. PAUL THOMAS, DR. KENNETH STOLLER, and CHILDREN'S HEALTH DEFENSE,

*Movants – Appellants*

On Appeal from the United States District Court

for the District of Massachusetts, No. 1:25-cv-11916-BEM

**APPELLANTS' OPPOSITION TO PLAINTIFFS-APPELLEES' JOINDER IN GOVERNMENT'S MOTION FOR SUMMARY AFFIRMANCE**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARGUMENT ...........................................................................................................3

    I. The Joinder Repeats Arguments Appellants Have Already Addressed.......3

    II. AAP's Narrow Reading of *Trbovich* Misstates the Doctrine .....................3

    III. *Kellogg* Governs the Interest-Divergence Question.................................5

    IV. AAP Cannot Have It Both Ways on Impairment....................................11

    V. The Permissive-Intervention Argument Adds Nothing............................15

CONCLUSION......................................................................................................16

CERTIFICATE OF COMPLIANCE.....................................................................18

CERTIFICATE OF SERVICE .............................................................................19

## TABLE OF AUTHORITIES

**Cases:**                                             **Page(s)**

*Animal Prot. Inst. v. Martin*,

241 F.R.D. 66 (D. Me. 2007)...................................................................................9

*Amoco Prod. Co. v. Village of Gambell*,

480 U.S. 531 (1987)...............................................................................................12

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,

440 F.3d 541 (1st Cir. 2006)...........................................................1, 4, 5, 6, 8, 9, 14

*Berger v. N.C. State Conf. of the NAACP*,

597 U.S. 179 (2022)..................................................................................................4

*Cameron v. EMW Women's Surgical Ctr.*,

595 U.S. 267 (2022)..................................................................................................4

*Conservation Law Found. v. Mosbacher*,

966 F.2d 39 (1st Cir. 1992)................................................................................10, 11

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.*,

172 F.3d 104 (1st Cir. 1999)..............................................................................11, 13

*FDA v. All. for Hippocratic Med.*,

602 U.S. 367 (2024)..................................................................................................7

*Glancy v. Taubman Ctrs., Inc.*,

373 F.3d 656 (6th Cir. 2004) ...................................................................................6

*Lewis v. Casey*,

518 U.S. 343 (1996)................................................................................................12

*Maine v. Dir., U.S. Fish & Wildlife Serv.*,

262 F.3d 13 (1st Cir. 2001)...................................................................................6, 9

*Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*,

197 F.3d 560 (1st Cir. 1999)..................................................................10, 11

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,

102 F.3d 12 (1st Cir. 1996)........................................................................12

*Santiago-Martinez v. Fundacion Damas, Inc.*,

93 F.4th 47 (1st Cir. 2024).........................................................................12

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,

807 F.3d 472 (1st Cir. 2015).......................................................................11

*T-Mobile Ne. LLC v. Town of Barnstable*,

969 F.3d 33 (1st Cir. 2020)...........................................................................3

*Taylor v. Sturgell*,

553 U.S. 880 (2008)..........................................................................2, 12, 13

*Tell v. Trustees of Dartmouth Coll.*,

145 F.3d 417 (1st Cir. 1998)..........................................................................6

*Trbovich v. United Mine Workers*,

404 U.S. 528 (1972).........................................................................1, 2, 3, 4, 5, 15

*Winter v. NRDC*,

555 U.S. 7 (2008)........................................................................................12

**Rules:**

Fed. R. App. P. 27(d)(2)(A).........................................................................16

Fed. R. App. P. 32(a)(5)-(6).........................................................................16

Fed. R. App. P. 32(f)....................................................................................16

Fed. R. Civ. P. 24(a)(2)....................................................................1, 5, 6, 7, 12, 14

**Other Authorities:**

IOM, *Immunization Safety Review: Multiple Immunizations and Immune Dysfunction*,

(2002) ...................................................................................................................8

IOM, *The Childhood Immunization Schedule and Safety*,

(2013) ...................................................................................................................8

Hoeg/Kulldorff Assessment (Dkt. No. 185-18).........................................................8

**INTRODUCTION**

Appellants are appealing two orders from the District Court. The first denied Appellants' motion to intervene in the case below. The second is a preliminary injunction, the Stay Order, that operates against Appellants' interests.

Three motions are now before this Court asking it not to consider the appeal on its merits: the Government's motion for summary affirmance of the intervention denial; AAP's partial motion to dismiss the portion of the appeal challenging the Stay Order; and AAP's joinder in the Government's motion. Appellants have already filed their opposition to the first two. The factual and procedural background appear in the prior motions and oppositions and is not repeated here.

Rule 24(a)(2) governs intervention as of right. An applicant must show a timely motion, an interest in the subject of the action, that the disposition will impair the applicant's ability to protect that interest, and that the existing parties do not adequately represent the applicant's interest. The Supreme Court has held that the burden to show inadequate representation is minimal: an applicant need only show "sufficient doubt" about adequate representation to warrant intervention. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 (1972).

The First Circuit applies that standard. In *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541 (1st Cir. 2006), this Court reviewed a denial of

intervention alongside a preliminary injunction that operated against the wrongly-excluded intervenor's interests. The Court reversed the intervention denial under Rule 24(a)(2), and then vacated the preliminary injunction as the necessary downstream consequence, because the rationale supporting intervention also required vacatur of relief that bound the intervenor. *Id.* at 547-48. Appellants' appeal presents the same posture in a single notice of appeal. The intervention denial and the Stay Order are two halves of one disposition.

Most of AAP's joinder repeats arguments the Government already made in its motion for summary affirmance, which Appellants opposed on April 27. Three of AAP's contentions go beyond what the Government argued and need a separate response. First, AAP reads *Trbovich* to require a statute that creates a conflict between the government and the applicant before the minimal-burden rule applies. Second, AAP cites *Taylor v. Sturgell*, 553 U.S. 880 (2008), for the proposition that Appellants are not impaired by the Stay Order because they cannot be formally bound by it. Finally, AAP argues that intervention at this stage would prolong the litigation.

Each argument fails, as Sections II through V show. The *Taylor* argument also collapses against AAP's adequacy argument, because *Taylor*'s third exception holds that adequately represented nonparties can be bound through preclusion.

2

## ARGUMENT

## I. The Joinder Repeats Arguments Appellants Have Already Addressed.

As the introduction notes, much of the joinder restates the Government's motion for summary affirmance. Appellants will not duplicate their April 27 opposition. The Court is respectfully directed to that filing for Appellants' arguments on the four-factor Rule 24(a)(2) test, the interest-alignment doctrine that controls adequacy, and the case-specific distinctions that take this case outside the First Circuit's adequacy precedents. *See* Opp. to Mot. for Summary Affirmance §§ I.A-C.[1]

## II. AAP's Narrow Reading o*f Trbovi*ch Misstates the Doctrine.

Appellants cite *Trbovich* for the minimal-burden rule. An applicant seeking to rebut Rule 24(a)(2)'s adequacy presumption need only make a "minimal"

---

[1] AAP devotes Section III of its joinder to the deferential standard of review, citing five cases. Joinder at 5-6. The Government raised the same argument in its motion for summary affirmance, and Appellants rebutted it. Opp. to Mot. for Summary Affirmance at 8. AAP devotes more space and cites more cases, but the argument and the response are the same: the District Court denied intervention by minute order with no findings on any Rule 24(a)(2) element, leaving no factual determination to which deference is owed. AAP's own authorities confirm the point. *SFFA* directs reversal where the district court "fails to follow the general recipe provided in Rule 24(a)(2) or reaches a plainly incorrect decision," 807 F.3d at 475, and *T-Mobile* instructs this Court to "review the record as a whole to ascertain whether, on the facts at hand, the denial was within the compass of the district court's discretion" when the denial is summary. 969 F.3d at 38.

showing that the existing party's representation "may be" inadequate. 404 U.S. at 538 n.10. The Supreme Court framed the standard as whether "there is sufficient doubt about the adequacy of representation to warrant intervention." *Id.* at 538.

AAP under-reads *Trbovich* as holding that the minimal-burden rule applies only when a statute creates a conflict between the government and the applicant. Joinder at 12. AAP draws that requirement from a single passage in *Maine v. Director, U.S. Fish & Wildlife Service*, 262 F.3d 13, 19 (1st Cir. 2001), in which this Court used the phrase "statutorily imposed conflict" to describe the facts of *Trbovich*. AAP's reading is wrong on three grounds.

First, *Trbovich*'s reasoning did not turn on statutory conflict. The Supreme Court grounded the minimal-burden rule on the text of Rule 24(a)(2), holding that the adequacy presumption is rebutted whenever there is "sufficient doubt" about representation to warrant intervention. 404 U.S. at 538. The phrase "statutorily imposed conflict" appears nowhere in *Trbovich*. The conflict in *Trbovich* was a fact of the case, not a precondition for the rule.

Second, the Supreme Court has continued to apply *Trbovich*'s minimal-burden standard outside the statutory-conflict context. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022), applied *Trbovich* in a case involving competing political principals within a state government, not a statutorily imposed

4

conflict. *Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267 (2022), did the same in a Kentucky abortion-statute appeal. If statutory conflict were a precondition, neither case would have come out the way it did.

Third, this Court itself applied *Trbovich*'s minimal-burden standard in *Kellogg*, a commercial breach-of-contract action between a beverage distributor and a Kellogg subsidiary. 440 F.3d at 542-43. The proposed intervenor and the named defendant were corporate affiliates with the same parent company. *Id.* at 545. No statute imposed any conflict between them. This Court nonetheless applied *Trbovich*'s minimal-burden standard, citing *Trbovich* twice for that proposition. *Id.* at 545-46, 547. The Court held that asymmetry in intensity of interest between the affiliated companies sufficed to defeat the adequacy presumption. *Id.* at 546. AAP's "statutorily imposed conflict" precondition cannot be reconciled with this Court's holding in *Kellogg*.

*Maine* itself is consistent with this reading. *Maine* used "statutorily imposed conflict" to describe what *Trbovich* "involved," 262 F.3d at 19, in the course of distinguishing the facts of *Trbovich* from the facts of *Maine*. The Court then applied *Trbovich*'s framework to the case before it. *Id.* at 19-21. Distinguishing *Trbovich* on its facts is not the same as narrowing *Trbovich* doctrinally, and *Maine* did not do the latter.

5

**III. *Kellogg* Governs the Interest-Divergence Question.**

Rule 24(a)(2) is satisfied when the applicant's interest differs in kind or degree from the existing party's interest. *Kellogg*, 440 F.3d at 546. The applicant does not need to show that the existing party is colluding with the plaintiff, abandoning the defense, or affirmatively adverse. The applicant need only show that its interest is sufficiently different from the existing party's that the existing party cannot fully represent it.

The First Circuit articulated this rule in *Kellogg*. The Court held that an applicant rebuts the adequacy presumption by offering "an adequate explanation as to why" the existing party cannot fully represent the applicant. 440 F.3d at 546 (quoting *Maine*, 262 F.3d at 19). "One way for the intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in kind or degree from those of the named party." *Id.* The Court endorsed the principle that "[a]symmetry in the intensity . . . of interest can prevent a named party from representing the interests of the absentee." *Id.* (quoting *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 675 (6th Cir. 2004)). And "without a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party." *Id.* at 547 (quoting *Tell v. Trustees of Dartmouth Coll.*, 145 F.3d 417, 419 (1st Cir. 1998)).

6

*Kellogg* applied this rule on facts of close alignment. The proposed intervenor and the named defendant were corporate affiliates with the same parent company, opposing the same plaintiffs, defending against the same statute, and sharing the same overall litigation goal. 440 F.3d at 545. Even on those facts, the First Circuit held the adequacy presumption rebutted. The proposed intervenor had "more to lose" than the named defendant, because the relief plaintiffs sought "would surely limit its opportunity to terminate or alter its future business relationship with appellees," while the named defendant was "unlikely to be harmed" by the same relief. *Id.* at 547. That asymmetry was enough.

AAP argues that the Government adequately represents Appellants because both oppose Plaintiffs' challenge and share the goal of defending the Secretary's authority. Joinder at 7-11. The Government's interest in the appeal does overlap with Appellants' interest, but the overlap is partial. Both the Government and Appellants will argue that AAP and its co-plaintiffs lack standing under *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). On that ground, the parties are aligned. Appellants will also press substantive defenses on the merits, and they will do so in part on grounds the Government cannot press.

Specifically, Appellants will defend the January 5 schedule revision in part on the Institute of Medicine's cumulative-schedule findings. The Institute of Medicine found in 2002 that no study had compared health outcomes between

7

children who received the full immunization schedule and those who did not, and recommended such analysis using the Vaccine Safety Datalink. IOM, *Immunization Safety Review: Multiple Immunizations and Immune Dysfunction* 14-15, 107-08 (2002) (Jaffe Decl. Ex. C, Dkt. No. 250).

In 2013, the IOM returned to the question and found that "studies designed to examine the long-term effects of the cumulative number of vaccines or other aspects of the immunization schedule have not been conducted." IOM, *The Childhood Immunization Schedule and Safety* 6 (2013) (Jaffe Decl. Ex. D, Dkt. No. 250).

The agency's own Hoeg/Kulldorff Assessment, filed by Plaintiffs in support of the preliminary-injunction motion, acknowledges these findings and concedes that "progress has been slow" and "only a few of the many studies that the IOM sought and deemed feasible have been conducted." Hoeg/Kulldorff Assessment 12-13 (Dkt. No. 185-18). The Government has chosen to litigate this appeal on jurisdictional and procedural grounds. Appellants will press the substantive defense which the Government has not and cannot assert. Admitting the more than two decades of institutional failure to test the cumulative effect of the vaccine schedule that the Government and Plaintiffs have promoted without such testing is contrary to the Government's institutional interests.

That divergence is what *Kellogg* identifies as inadequate representation. *Kellogg* found inadequacy on facts where the proposed intervenor and the named defendant were corporate affiliates with the same parent company, opposing the same plaintiffs, defending against the same statute, and sharing the same overall litigation goal. 440 F.3d at 545. The First Circuit nonetheless held the adequacy presumption rebutted because the proposed intervenor had "more to lose" than the named defendant. *Id.* at 547. Here, Appellants have more to lose than the Government because the Government can win on jurisdictional grounds without ever defending the regulatory action substantively. Appellants need a substantive defense that the Government's institutional posture forecloses. The asymmetry is greater than what *Kellogg* found sufficient.

Appellants' interests are direct and personal. Andrea Shaw and Shanticia Nelson lost children under the schedule the Stay Order restored. Drs. Paul Thomas and Kenneth Stoller had their medical licenses acted on under the ACIP framework the Stay Order restored. Children's Health Defense competes with AAP in the market for vaccine-related health information that the Stay Order regulates. *See* Opp. to Partial Mot. to Dismiss, Statement § I. The Government has not articulated, and could not articulate, an interest in vindicating these injuries.

AAP's authorities do not change the analysis. *Maine v. Director* itself preserved a carve-out for cases involving "direct private interests," 262 F.3d at 20,

9

distinguishing those cases from ones involving generalized policy disagreement. The District of Maine applied the carve-out in *Animal Protection Institute v. Martin*, 241 F.R.D. 66, 70 (D. Me. 2007), holding that proposed intervenors with concrete personal stakes were not adequately represented by the state agency. Appellants have direct private interests of exactly the kind *Maine* identified.

*Mass. Food Association v. Massachusetts Alcoholic Beverages Control Commission*, 197 F.3d 560 (1st Cir. 1999), is also distinguishable. *Mass. Food* found adequacy on three predicates: the government was "zealously interested in upholding [the statute's] validity," the case did not require "an evidentiary determination," and the proposed intervenors had no "information that could only be presented by their participation as parties." *Id.* at 567. None of those predicates holds here.

The Government has accepted the Stay Order substantively and has not sought a stay of it. That is not the zealous defense *Mass. Food* required. The Stay Order rests on findings of fact, including the District Court's footnote 56 acknowledgment that defendants "provided no basis for the Court to assess the qualifications and conflicts of interest of the new ACIP members." Stay Order n.56. And Appellants offer evidence the Government has not presented and will not present, including the IOM record discussed above and the medical-board records demonstrating the disciplinary regime the Stay Order operationally

10

restored. *See* Opp. to Mot. for Summary Affirmance § I.C; Jaffe Decl., Dkt. No. 250.

*Mass. Food* itself preserved the carve-out for cases like this one. The Court reaffirmed *Conservation Law Foundation v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992), in which intervenors who had participated extensively in the prior administrative process and offered unique factual contributions were entitled to intervene. *Mass. Food*, 197 F.3d at 567. Appellants are in *Mosbacher*'s posture, not in *Mass. Food*'s.

AAP's reliance on *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 807 F.3d 472 (1st Cir. 2015), fares no better. The proposed intervenors there were students seeking to defend Harvard's admissions policy alongside Harvard. Their disagreement with Harvard concerned which legal arguments to press, not whether the admissions policy should be defended. *Id.* at 475-77. Their goals were "four-square" Harvard's, triggering the presumption of adequate representation. *Id.* at 475.[2] Appellants are differently situated. They have personal injuries the Government does not share and cannot vindicate.

---

[2] Although AAP cites *SFFA* against Appellants, the decision applies *Trbovich*'s minimal-burden standard in a context with no statutorily imposed conflict, 807 F.3d at 475, and analyzes adequacy through the *Kellogg* and *Daggett* framework Sections II and III above describe. *Id.*

11

**IV. AAP Cannot Have It Both Ways on Impairment.**

Practical impairment is built into the sequence of orders before this Court. On February 27, 2026, the District Court denied intervention. On March 16, 2026, it entered the Stay Order. *Winter v. NRDC*, 555 U.S. 7 (2008), required the District Court to make four findings before entering preliminary injunctive relief, including "that the balance of equities tips in his favor." *Id.* at 20. The Court directed that "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)). The First Circuit applies *Winter* by weighing "the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996). The framework weighs party harm against party harm. The Supreme Court has confirmed the constitutional underpinning: equitable relief "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Appellants' losses—the deaths of Shaw's twins and Nelson's daughter, the licensure actions against Drs. Thomas and Stoller, and the regulatory market in which CHD competes—were not weighed in the equitable balance that produced the Stay Order. They could not have been. Appellants were not parties as of March 16, 2026, and the doctrine

12

forbids the District Court from weighing or remedying their harms in that capacity. The intervention denial removed Appellants from the equitable equation; the Stay Order resolved that equation without them. The two orders are two halves of one disposition. That sequence is itself the practical impairment Rule 24(a)(2) addresses, and it forecloses AAP's *Taylor v. Sturgell* argument: non-party status is the source of the impairment, not its cure.

Rule 24(a)(2) requires that the applicant be impaired "as a practical matter" by the disposition of the action. The text of the rule places the focus on operational effect. The First Circuit applies that distinction directly: "While the applicants might not in a strict *res judicata* sense be 'bound' by the decision . . . the 'practical' test of adverse effect that governs under Rule 24(a) is easily satisfied here." *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 110 (1st Cir. 1999).

Practical impairment is satisfied here. The Stay Order operates against the regulatory framework that bears on Appellants' interests. It restores the schedule under which Shaw and Nelson lost children, restores the ACIP framework under which Drs. Thomas and Stoller had their licenses acted on, and restores the regulatory environment in which Children's Health Defense competes. Appellants' ability to protect their interests is impaired regardless of whether they are formally bound by the order under preclusion principles.

13

AAP argues otherwise. AAP says Appellants are unimpaired because they "are not parties to this litigation and, therefore, will not be bound by an issued court order." Joinder at 14. AAP grounds that argument in *Taylor v. Sturgell*, 553 U.S. 880 (2008), and the principle that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party." The argument fails on two independent grounds.

First, *Taylor* addresses preclusion, not Rule 24(a)(2). *Taylor* sets out when a nonparty may be bound by a prior judgment under federal common-law preclusion principles. 553 U.S. at 891. The opinion does not address Rule 24(a)(2) practical impairment, does not cite Rule 24, and contains no discussion of intervention. The First Circuit has applied *Taylor* in only one published decision since 2008, *Santiago-Martinez v. Fundacion Damas, Inc.*, 93 F.4th 47 (1st Cir. 2024), and that application was confined to the bankruptcy preclusion context. *Id.* at 51-54. The First Circuit has gone further and expressly distinguished practical impairment under Rule 24(a)(2) from binding effect under preclusion. The applicants in *Daggett* would not have been bound by the judgment in any formal preclusion sense. The First Circuit nonetheless held the practical-impairment requirement satisfied. 172 F.3d at 110. AAP's argument asks this Court to treat preclusion analysis as a substitute for Rule 24(a)(2)'s practical-effect inquiry. The text of the rule and the First Circuit's case law forbid that substitution.

14

Second, AAP's *Taylor* argument contradicts AAP's adequacy argument. *Taylor* itself recognizes that nonparties can be bound by judgments through preclusion when they were "adequately represented by someone with the same interests who [wa]s a party" to the suit. 553 U.S. at 894. That is *Taylor*'s third exception to the rule against nonparty preclusion. The exception applies when adequacy is shown.

If AAP is right that the Government adequately represents Appellants, Appellants are within *Taylor*'s third exception and would be bound through preclusion. If AAP is wrong about adequacy, Appellants are entitled to intervene to protect their interests directly. Either way, impairment is satisfied. And if AAP is right that the Stay Order does not affect Appellants' interests at all, AAP cannot explain why the Stay Order needs to operate against them in the first place, which makes the Stay Order overbroad on its own terms.

## V. The Permissive-Intervention Argument Adds Nothing.

AAP argues that permissive intervention should be denied because adding Appellants would prolong the litigation and complicate proceedings of "critical importance to public health." Joinder at 15-17. The argument has two problems.

AAP's permissive-intervention objection presupposes that delay would prejudice AAP's interests. It cannot. AAP sought and obtained a preliminary

15

injunction that undid the Secretary's past actions, the January 5 schedule revision, the ACIP reconstitution, and the reconstituted ACIP's votes, and that prevents further action presumably until the District Court is satisfied an ACIP is properly constituted. App. at 462. AAP got both the rollback and the prospective freeze. The Government filed its notice of appeal on April 29, 2026. Dkt. No. 306. While that appeal is pending, the injunction holds and AAP's protection continues to run. Pace is not an issue because there is no harm AAP needs the case to outpace.

Second, urgency is not a basis to depart from Rule 24(a)(2)'s standards. *Kellogg* itself reversed an intervention denial and vacated a preliminary injunction in a case the parties had treated as urgent. 440 F.3d at 547-48. The First Circuit did not treat asserted urgency as a reason to truncate the analysis Rule 24(a)(2) requires.

## CONCLUSION

The standard for intervention as of right is *Trbovich*'s minimal-burden rule. An applicant need only show sufficient doubt about the adequacy of the existing party's representation to warrant intervention. *Trbovich*, 404 U.S. at 538.

The factual record below and the litigation posture each side has taken on appeal show divergence that is not close to the line. The Government has chosen to defend on jurisdictional and procedural grounds, has not sought a stay of the Stay

16

Order, has told the District Court the Stay Order "remains in full effect" and "continues to protect Plaintiffs against any irreparable harm," and has foreclosed itself from making the substantive defense Appellants will press. Appellants are seeking vacatur on the merits on grounds that include the IOM evidence the Government's own assessment concedes. These are differences in kind, and the divergence is so plain that this is not a close case under the minimal-burden standard.

The Court should deny the joinder, deny the Government's motion for summary affirmance, and proceed to the merits of the consolidated appeal.

Dated: May 4, 2026

Respectfully submitted,

/s/ Richard Jaffe
Richard Jaffe
428 J Street, 4th Floor
Sacramento, California
95814
(916) 492-6038
rickjaffeesquire@gmail.c
om

Robert N. Meltzer
Mountain States Law
Group
33 Bradford Street
Concord, Massachusetts
01742
(978) 254-6289

Counsel for Appellants

17

## CERTIFICATE OF COMPLIANCE

This opposition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,694 words, excluding the parts exempted by Fed. R. App. P. 32(f). It also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

/s/ Richard Jaffe

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2026, I electronically filed the foregoing

Opposition to Plaintiffs-Appellees' Joinder in Government's Motion for Summary

Affirmance with the Clerk of the Court for the United States Court of Appeals for

the First Circuit by using the appellate CM/ECF system. Service will be

accomplished by the appellate CM/ECF system.


/s/ Richard Jaffe